UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD.,<br>No. 88 Weilai 3rd Road, East Lake High-tech Development Zone, Wuhan, Hubei, 430205 China,<br><br>        *Plaintiff*,<br><br>  v.<br><br>U.S. DEPARTMENT OF DEFENSE,<br>1400 Defense Pentagon, Washington, D.C. 20301,<br><br>PETE HEGSETH, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF DEFENSE,<br>1000 Defense Pentagon,<br>Washington, D.C. 20301,<br><br>MICHAEL CADENAZZI, in his official capacity as ASSISTANT SECRETARY OF DEFENSE FOR INDUSTRIAL BASE POLICY,<br>3010 Defense Pentagon,<br>Washington, D.C. 20301,<br><br>        *Defendants*. | Civ. Action No. _ |

**<u>COMPLAINT</u>**

1

Plaintiff Yangtze Memory Technologies Company, Ltd. ("YMTC"), by and through its undersigned counsel, hereby respectfully files this Complaint against Defendants, the U.S. Department of Defense ("DoD"); Pete Hegseth, in his official capacity as Secretary of Defense, U.S. Department of Defense; and Michael Cadenazzi, in his official capacity as Assistant Secretary of Defense for Industrial Base Policy, alleging as follows:

## INTRODUCTION

1.      YMTC is one of the world's leading developers and manufacturers of 3D NAND flash memory products, which are found in any number of consumer electronics products, including smart phones, TVs, laptop computers, and other devices.  YMTC's flash memory chips and related products allow such devices to store and retain vast amounts of data, even when the power is off.  Flash memory chips do not process data; rather, they are the repositories where data resides.  Without reliable data storage of this kind, our modern digital ecosystem would not exist.

2.      This lawsuit challenges and seeks to enjoin enforcement of DoD's arbitrary and capricious decision to designate YMTC as a statutorily defined "Chinese Military Company" ("CMC"), notwithstanding that YMTC is not affiliated with, much less owned or controlled by, the Chinese military and does not constitute a "military-civil fusion contributor to the Chinese defense industrial base," as defined by statute.

3.      DoD first designated YMTC as a CMC on January 31, 2024, without notice or an opportunity to be heard, pursuant to Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act ("NDAA") for Fiscal Year 2021.[1]  On January 7, 2025, again without prior notice or an opportunity to be heard, DoD redesignated YMTC.

---

[1]   Pub. L. No. 116-283, 134 Stat. 3388, 3965–3966 (Jan. 1, 2021), as amended Pub. L. No. 118-159, Div. A, Title XIII, sec. 1346, 138 Stat. 1773, 2123–2126 (Dec. 23, 2024) [hereinafter, "Section 1260H"].

4.      As a result of the CMC designation, which branded the company a national security threat, YMTC has suffered ongoing financial and reputational harm, including lost business.

5.      YMTC, through outside counsel, sought to engage with DoD over a period of more than 10 months in an effort to understand DoD's rationale for designating YMTC, obtain the administrative record on which the decision was based, and provide DoD with facts demonstrating that YMTC does not qualify as a CMC under the statutory criteria.

6.      On September 10, 2025, YMTC filed a comprehensive reconsideration request establishing that DoD was required to remove YMTC from the CMC List pursuant to its statutory duty to "make . . . deletions" from the List "based on the most recent information available."

7.      DoD subsequently requested additional information, which YMTC promptly provided in good faith on October 15, 2025.  Despite YMTC's continued efforts to engage constructively, DoD has provided no indication of when it will act on YMTC's submissions, in spite of repeated questions from YMTC regarding DoD's timeline for deciding this issue.  Having exhausted all reasonable avenues for administrative resolution, YMTC now brings this action.

8.      DoD's arbitrary designation and redesignation of YMTC as a CMC and its continuing failure to remove YMTC from the CMC List are unlawful under the Administrative Procedure Act and violate YMTC's right to due process under the Fifth Amendment to the Constitution.  Accordingly, this Court should set aside, enjoin, and declare unconstitutional the challenged designation.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal-question jurisdiction) and § 2201 (the Declaratory Judgment Act).

10.    This Court has the authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, and the Court's inherent equitable power.

11.    Venue is proper under 28 U.S.C. § 1391(b) and (e) as this is a civil action in which Defendants are federal agencies and officers acting in their official capacities, a substantial part of the events giving rise to these claims occurred in the District of Columbia, and Defendants reside in this district.

## PARTIES

12.    Plaintiff YMTC is a private company headquartered in Wuhan, China, with operations and business relationships across Asia, the United States, and other global markets. YMTC is a leading developer and manufacturer of advanced 3D NAND flash memory and related storage technologies.  It employs more than 8,900 professionals worldwide, including seven through its U.S. affiliates.

13.    Defendant DoD is a department of the Executive Branch of the United States Government and an executive agency within the meaning of 5 U.S.C. § 551(1).  DoD is responsible for publishing and maintaining the CMC List according to the designation criteria in Section 1260H.[2]

14.    Defendant Peter ("Pete") Hegseth is the Secretary of Defense.  In that capacity, he oversees the functions of DoD, including the maintenance of the CMC List.  Secretary Hegseth is sued in his official capacity.

15.    Defendant Michael Cadenazzi is the Assistant Secretary of Defense for Industrial Base Policy.  In that capacity, he manages the processes for the designation of entities on the CMC

---

[2]    *See* Pub. L. No. 116-283, 134 Stat. 3965, as amended Pub. L. 118-159, 138 Stat. 2123.

List and the removal of entities from the CMC List.  Assistant Secretary Cadenazzi is sued in his official capacity.

## FACTS

### I.     YMTC and Its Business

16.     YMTC is a semiconductor integrated device manufacturer specializing in the design, development, and production of flash memory products.  Its products and solutions— ranging from 3D NAND flash memory wafers and packaged chips to embedded memory and both consumer and enterprise SSDs—are used globally in mobile devices, consumer electronics, computers, and servers.

17.     YMTC supplies its products primarily to original equipment manufacturer (OEM) clients—companies that incorporate YMTC components into their own branded devices.  It also sells a range of consumer products under its own brand, ZhiTai.  YMTC has a global supplier and customer base and is an important player in the global supply chain.

18.     YMTC was founded in Wuhan, China, in 2016, and has developed into a multinational company and one of the global leaders in the development and production of NAND. YMTC has never been affiliated with the Chinese military.  Contrary to DoD's allegations, YMTC was not "formerly known as Tsinghua Unigroup Ltd."[3]  While YMTC was a subsidiary of Tsinghua Unigroup Co., Ltd. ("Unigroup") until 2021, it operated independently with its own management structure and decision-making process separate from those of its parent company.

19.     YMTC has developed and patented technologies that enable the production of better flash memory, having more capacity and a lower per-bit cost.  YMTC's innovations have not gone unnoticed.  At the 2018 Flash Memory Summit, YMTC received the award for the Most

---

[3]     Report at 4.

Innovative Flash Memory Start-up Company, was recognized as one of "the most creative and ambitious startup companies," and was "applauded" for "becoming a market disruptor and champion of the storage industry." Since then, YMTC has continued to innovate. At the 2022 Flash Memory Summit, YMTC received the award for Most Innovative Memory Technology for YMTC's Xtacking® 3.0 3D NAND Architecture.

20. Independent industry analysis further confirms YMTC's role as leader in its field. TechInsights, a leading authority in semiconductor analysis, identified YMTC's 3D NAND chip as "the world's most advanced 3D NAND memory chip in a consumer device," featuring "the highest bit density seen in a commercially available NAND product."[4]

21. YMTC's cutting-edge technology has enabled it to establish meaningful and lasting commercial relationships in the United States. In 2022, a prominent U.S.-headquartered manufacturer of consumer computing products chose YMTC as a supplier of advanced memory chips—a testament to YMTC's reliability, innovation, and competitiveness in the semiconductor industry. YMTC has also engaged in sustained commercial and technical discussions with multiple other U.S. companies, reflecting both ongoing demand for YMTC's products and the company's commitment to supporting the U.S. technology ecosystem. DoD's unsupported designation of YMTC as a CMC has jeopardized these relationships, chilled commercial opportunities, and inflicted significant reputational harm.

---

[4] *See China Does It Again: A NAND Memory Market First*, TECHINSIGHTS, https://tinyurl.com/6nta9xjz.

## II.    DoD's Designation and Redesignation of YMTC as a CMC

### A.    DoD Adds YMTC to the CMC List in 2024 and Redesignates YMTC in 2025

22.    On January 31, 2024, without providing notice, an opportunity to be heard, or an explanation of its decision, DoD included YMTC on the list of entities designated pursuant to Section 1260H of the NDAA as CMCs operating in the United States.[5]

23.    By incorrectly designating YMTC, the government branded YMTC as a national security threat, which the media then widely reported.[6]  The designation caused YMTC significant and ongoing harm.

24.    On August 28, 2024, YMTC submitted a FOIA request seeking, among other things, the administrative record pertaining to YMTC's designation.  Despite sending multiple follow-up letters and emails, DoD failed to provide any meaningful response.

25.    On January 7, 2025, DoD published an updated CMC List that redesignated YMTC without offering any public justification; nor did DoD provide any prior notice or opportunity to be heard.[7]  Although DoD both signed and published the CMC List in January 2025, DoD cited

---

[5]    *See* U.S. Dep't of Defense, Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Jan. 31, 2024), https://tinyurl.com/d926urvt [hereinafter "FY 2024 CMC List"];  *DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance With Section 1260H of the National Defense Authorization Act for Fiscal Year 2021*, U.S. Dep't of Defense (Jan. 31, 2024), https://tinyurl.com/2t4phyc8 (containing link to FY 2024 CMC List).

[6]    *See, e.g.*, Idrees Ali, *Pentagon calls out Chinese companies it says are helping Beijing's military*, Reuters (February 1, 2024), https://tinyurl.com/2r6pshj3; *Pentagon Updates List of "Chinese Military Companies," Including YMTC and Others*, TrendForce (Feb. 1, 2024), https://tinyurl.com/2y33c6wu.

[7]    *See* U.S. Dep't of Defense, Entities Identified as Chinese Military Companies Operating in the United States in Accordance with Section 1260H of the William M.

and relied upon the **predecessor** version of Section 1260H, which **predated** the December 2024 amendments to Section 1260H.[8]

26.    On February 4, 2025, DoD notified YMTC that it would respond to YMTC's FOIA request by March 28, 2025.  That date came and went without any response.

27.    On February 27, 2025, YMTC contacted DoD using the email provided on the Industrial Policy Base website, which is the office with responsibility over the CMC List, requesting an opportunity to speak with DoD to understand the basis for listing YMTC and to answer any questions.

28.    On March 27, 2025, YMTC contacted DoD using the email address provided in the January 7, 2025 Federal Register notice for reconsideration requests, requesting that DoD promptly provide the basis for its designation.[9]

29.    On April 1, 2025, DoD sent YMTC a nine-page report—dated December 6, 2024—purporting to explain the rationale for YMTC's redesignation as a CMC in 2025, attached hereto as **Exhibit A** (the "Report"). The Report contains numerous factual errors, relies on outdated allegations, and fails to articulate a legally or factually adequate basis for the designation.

30.    On May 5, 2025, YMTC received a "final response" to its FOIA request.  The response included the Report and certain cited materials, but over half of the production was

---

("MAC") THORNBERRY NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2021 (PUBLIC LAW 116-283 (Jan. 7, 2025), https://tinyurl.com/bdhm6z86 [hereinafter "FY 2025 CMC List"]; *DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance With Section 1260H of the National Defense Authorization Act for Fiscal Year 2021*,  U.S. DEP'T OF DEFENSE (Jan. 7, 2025), https://tinyurl.com/yvt6r4e5 (containing link to FY 2025 CMC List).

[8]    *See* Notice of Availability of Designation of Chinese Military Companies, 90 Fed. Reg. 1105 (Jan. 7, 2025) (citing to only Pub. L. No. 116-283 without reference to amendments).

[9]    *Id.*

redacted, purportedly pursuant to FOIA Exemptions 4 (trade secrets or confidential commercial information), 5 (deliberative process), and 6 (personal privacy).

31.     On September 10, 2025, YMTC submitted a formal reconsideration petition to DoD, attached hereto as **Exhibit B**.  In its reconsideration petition, YMTC explained that the Report's finding that "YMTC is a military-civilian fusion contributor to the Chinese defense industrial base" was based on contrary, incomplete, and outdated information rather than the most recent and accurate information available, as required by law.  YMTC accordingly requested that DoD reverse the designation and/or redesignation and remove it from the CMC List.

32.     DoD subsequently sought additional information, which YMTC promptly provided in good faith on October 15, 2025. Despite YMTC's comprehensive submissions and continued efforts to engage constructively, DoD provided no indication of when it will act on YMTC's submissions, in spite of repeated questions from YMTC regarding DoD's timeline for deciding this issue.  With no meaningful administrative recourse remaining, YMTC now seeks judicial relief.

**B.     DoD's Actions Have Inflicted, and Threaten to Continue To Inflict, Substantial Harm on YMTC and the U.S. Public**

33.     As a result of DoD's unlawful and erroneous decision to place and maintain YMTC on the CMC List, which marks YMTC as a national security threat, YMTC has suffered significant and ongoing financial and reputational harm.

34.     Among other things, the listing has significantly damaged YMTC's relationships with existing and potential suppliers, business partners, and customers.  Multiple prospective customers have explicitly stated that they will not source from YMTC unless and until YMTC is removed from the CMC List.

35.     These harms are not surprising, as Congress created the CMC List to "name and shame" the designated companies in order to dissuade the U.S. and international community from

doing business with them.[10]  As Reuters observed, designation as a CMC "can be a blow to designated companies' reputations and represents a stark warning to U.S. entities and companies about the risks of conducting business with them."[11]  Every day that it remains on the CMC List, YMTC is suffering these and other significant harms.

### III. Statutory Framework: Section 1260H of the NDAA and the CMC Designation Criteria

36.  DoD's authority to designate YMTC as a CMC derives from Section 1260H of the NDAA for Fiscal Year 2021.[12]

37.  Section 1260H requires DoD to publish an annual list of Chinese military companies, or "CMCs", that operate in the United States ("CMC List").[13]  Section 1260H requires the Defendants to designate CMCs "based on the most recent information available" and further requires that they "make additions or deletions" to that list "based on the latest information available."[14]

---

[10]  *See* Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H*, LAWFARE (May 4, 2021), https://tinyurl.com/mw7fm7sr ("In the context of Chinese military companies, Congress began assembling this mosaic more than 20 years ago with Section 1237, which combined a sanctions regime with a 'naming and shaming' regime.").

[11]  Idrees Ali, Alexandra Alper, and Michael Martina, *Pentagon calls out Chinese companies it says are helping Beijing's military*, REUTERS (Feb. 1, 2024), https://tinyurl.com/4cmra6pn.

[12]  Pub. L. No. 116-283, 134 Stat. 3388, 3965-3966 (Jan. 1, 2021), as amended by Pub. L. No. 118-159, Div. A, Title XIII, sec. 1346, 138 Stat. 1773, 2123–2126 (Dec. 23, 2024).

[13]  Section 1260H's provisions originated in a now unused statute, Section 1237 of the Strom Thurmond National Defense Authorization Act for Fiscal Year 1999. *See* Pub. L. No. 105-261, 112 Stat. 1920, 2160-2161 (1998), as amended by Pub. L. No. 106-398, § 1233, 114 Stat. 1654, 1654A-330 (2000), and Pub. L. No. 108-375, § 1222, 118 Stat. 1811, 2089 (2004) ("Section 1237"); *see also* Jordan Brunner, *Communist Chinese Military Companies and Section 1237: A Primer*, THE LAWFARE INST. (Mar. 22, 2021), https://tinyurl.com/2s4aaajs (describing the background and history of Section 1237).

[14]  Section 1260H(a), (b).

38.     Section 1260H defines the term Chinese Military Company to mean an entity that is "engaged in providing commercial services, manufacturing, producing, or exporting" and that satisfies either of the following two additional conditions:[15]

39.     First, such a company is a CMC if it is "directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army, Chinese military and paramilitary elements, security forces, police, law enforcement, border control, the People's Armed Police, the Ministry of State Security (MSS), or any other organization subordinate to the Central Military Commission of the Chinese Communist Party, the Chinese Ministry of Industry and Information Technology (MIIT), the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC), or the State Administration of Science, Technology, and Industry for National Defense (SASTIND)."[16]

40.     Second, such a company is a CMC if it is "identified as a military-civil fusion contributor to the Chinese defense industrial base."[17]  The phrase "to the Chinese defense industrial base" has "independent meaning" and serves to limit the scope of entities subject to designation.[18]

---

[15]   Section 1260H(g)(2)(B).

[16]   Section 1260H(g)(2)(B)(i)(I).

[17]   Section 1260H(g)(2)(B)(i)(II).

[18]   *Hesai Technology Co., Ltd v. U.S. Dep't of* Defense, No. 1:24-cv-1381, 2025 WL 1911673, at *10 (D.D.C. July 11, 2025).

41.  Congress has defined "military-civil fusion contributor[s]" to include the following:

a.  Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives, including selection or designation as a 'Single Champion', 'Little Giant', or any other successor selection or designation as an enterprise associated with industrial planning or military-civil fusion efforts.

b.  Entities managed, overseen, or supervised by, otherwise under the control of, or affiliated with (including by means of formal participation in research partnerships and projects)—

(i)  the Chinese Ministry of Industry and Information Technology (MIIT);

(ii)  the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC);

(iii)  the State Administration of Science, Technology and Industry for National Defense (SASTIND);

(iv)  the Ministry of State Security (MSS); or

(v)  the People's Liberation Army.

c.  Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

d.  Any entities or subsidiaries defined as a 'defense enterprise' by the State Council of the People's Republic of China.

e.  Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

f.  Entities awarded with receipt of military production licenses by the Government of China, including a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

g.  Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

     h.    Any other entities the Secretary determines is appropriate.[19]

42.     In addition, on December 23, 2024, Section 1260H was amended to require that the unclassified portion of the CMC List be published in the Federal Register and "shall include, for each entity included in the unclassified portion of such list, the justification for inclusion in such list."[20]

43.     Since 2021, Congress has enacted a series of restrictions targeting entities designated as CMCs.  The National Defense Authorization Act for Fiscal Year 2024 prohibits DoD from contracting with any CMC.[21]  Similarly, the Further Consolidated Appropriations Act for 2024 bars the Department of Homeland Security from doing the same.[22]

## IV.    DoD Applies the Wrong Version of the Applicable Statute in Designating YMTC

44.     In both the CMC List published on January 7, 2025, and the Report justifying YMTC's inclusion on that list, DoD relied on the outdated version of Section 1260H—failing to account for amendments that took effect on December 23, 2024.  Although the designation would be improper under either version of the statute, DoD's failure to apply the correct, operative legal standard is itself grounds for vacatur.  Such a fundamental legal error—ignoring the statute in effect at the time of agency action—does not "inspire confidence in the fastidiousness of the agency's decision-making process," and has prejudiced YMTC.[23]

---

[19]   Section 1260H(g)(3).

[20]   Section 1260H(b)(2).

[21]   Pub. L. No. 118-31, § 805(a)(1), 137 Stat. 136, 315 (Dec. 22, 2023).

[22]   Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 (Mar. 23, 2024).

[23]   *Xiaomi Corp. v. Dep't of Def.*, No. CV 21-280 (RC), 2021 WL 950144, at *5 (D.D.C. Mar. 12, 2021); *see also Poett v. United States*, 657 F. Supp. 2d 230, 236-37 (D.D.C. 2009) (finding an

### V.     DoD's Designation of YMTC Lacks Legal and Evidentiary Support Sufficient to Satisfy the Requirements of the APA

45.     The Report states that YMTC is a CMC based on a finding that "YMTC is a military-civil fusion contributor to the Chinese defense industrial base."[24]  That conclusion relies, in turn, on two predicate findings, each necessary to YMTC's designation as a CMC:  (1) that "YMTC directly contributes to the Chinese defense industrial base" by producing memory products that are "essential component in modern computing and represent a dual-use technology critical to consumer electronics, telecommunications, defense, and other industrial sectors";[25] and (2) YMTC is affiliated with the Chinese MIIT, including through  "research partnerships and projects."[26]

46.     Neither of these purported justifications withstands scrutiny.  The Report applies the wrong legal standard, relies on an outdated and factually flawed record, and fails to identify any evidence sufficient to satisfy the governing statutory criteria.

### A.     DoD's Finding that YMTC Contributes to the Chinese Defense Industrial Base Is Not Supported by the Record

47.     Under Section 1260H, a threshold requirement for qualification as a military-civil fusion contributor to the Chinese defense industrial base is that the entity "contribut[es] to the Chinese defense industrial base."[27]  An entity contributes "to the Chinese defense industrial base"

---

agency determination to suffer from "key flaws" when it "misquot[ed]" the statute at issue and applied "an incorrect definition" of a statutory term).

[24]   Report at 5.

[25]   *Id.*

[26]   *Id.* at 6.

[27]   *Hesai*, 2025 WL 1911673, at *12.

if it "produces a product or technology that has substantial military application."[28]  A mere "showing that a product can have both commercial and military application is insufficient."[29]

48.    U.S. export control law draws a clear line between commercial end-use and military end-use.   Certain non-volatile memory devices are classified under ECCN 3A001 on the Commerce Control List ("CCL") only if they meet specific technical parameters—such as radiation hardening or extreme temperature tolerances—demonstrating their suitability for military or aerospace use.[30]  YMTC's products and technologies do not meet these thresholds. YMTC makes no claim that its flash memory products are radiation-hardened, ruggedized, or tested for use in extreme environments.  Nor are they marketed, sold, or certified for any military or defense purpose.  On the contrary, DoD's own Report acknowledges that YMTC's products are designed solely "for commercial and civilian customers' use."[31]

49.    DoD's Report includes no finding that YMTC's products or technology have "substantial military application."[32]  Instead, it merely states that YMTC operates in a field— semiconductor memory, flash memory, and storage devices—that includes "dual-use technology."[33]  But merely participating in a sector with potential dual-use relevance does not

---

[28]    *Id.*

[29]    *SZ DJI Tech. Co. v. U.S. Dep't of Def.*, 2025 WL 2761210, at *16 (D.D.C. Sept. 26, 2025) (quoting *Hesai*, 2025 WL 1911673, at *11) (quotations marks omitted).

[30]    *See* 15 C.F.R. § 774, Supp. No. 1, ECCN 3A001.

[31]    Report at 4.

[32]    *Id.*

[33]    Report at 5.

establish that YMTC's own technologies or products are suitable for or used in military applications. Section 1260H requires an actual contribution—not theoretical proximity.

50.    The industry and media sources DoD cites in fact reinforce that YMTC's products do not have military applications and in fact are not suitable for such uses. DoD cites to a market analysis by Yole Intelligence (footnotes 9, 13, and 14), for example, but the Yole report does not mention military or defense applications, let alone any involvement by YMTC in furthering such applications. DoD also references a trade article on a U.S. company, Cobham, which developed radiation hardened NAND flash for space applications (footnote 10). The article makes clear that these ruggedized storage solutions are specifically engineered for military and aerospace use, and that commercial-grade memory does not meet those stringent requirements.

51.    Footnote 11 points to a 2008 Military Embedded Systems article discussing the growing use of SSDs in military settings, but the article does not claim that YMTC products are used in these settings. To the contrary, it emphasizes how commercial off-the-shelf ("COTS") SSDs have been adopted in some defense systems for reasons of cost and availability, but also notes that COTS drives do not necessarily meet military standards. These articles undercut the notion that commercial flash producers like YMTC's serve the defense market.

52.    Footnote 12 cites a technical white paper on solid-state storage in military and aerospace environments. While the paper confirms that SSDs can be used in such contexts, it also states that older, single-level cell ("SLC") flash is better suited to extreme conditions than newer, denser types such as eMLC or TLC. YMTC specializes in high-density 3D NAND TLC memory—optimized for smartphones and consumer electronics—not the SLC flash required for rugged or radiation-tolerant military applications. The white paper thus contradicts DoD's position

that YMTC "directly contributes" to defense, instead affirming that it does not meet the performance requirements of military systems.

53.     In fact, YMTC manufactures commercial-grade dies and packaged components for high-volume civilian markets.  As YMTC has publicly stated, its technology "is not military grade nor fitted for military application," and it "has never supplied its technology or products for any military use."[34]  As DoD's own sources make clear, military-grade flash memory requires specialized engineering and/or certification, including radiation hardening, wide temperature tolerance, and ruggedized design features that commercial-grade products like YMTC's do not possess.[35]

54.     To meet military specifications, memory devices must conform to standards such as DoD's MIL-STD-810G, which sets performance requirements for environmental conditions including vibration, temperature extremes, and shock.[36]  China maintains similar military standards applicable to storage and electronic components, including, for instance, GJB150-1986 (Environmental Test Methods for Military Equipment).[37]  YMTC's products are not designed or tested to meet these military performance standards.

---

[34]  Che Pan, *Tech war: China's top memory chip maker YMTC sees rising domestic demand, defying US curbs*, myNEWS (June 14, 2024), https://tinyurl.com/mu4rzkw5.

[35]  *See, e.g.*, Report at 5 n.12.

[36]  *See* DoD, MIL-STD-810G, Department of Defense Test Method Standard for Environmental Engineering Considerations and Laboratory Tests (Oct. 31, 2008).

[37]  *See, e.g.*, Storlead, *09-AN_8 Lu SATA LRM Cunchu Mokuai Chanpin Guigeshu* [*09-AN_8-Channel SATA LRM Storage Module Product Specification Sheet*], https://tinyurl.com/55sxf8eu (last visited Apr. 28, 2025) (advertising compliance with GJB150-1986 and other Chinese military standards).

55.     The absence of the relevant military capabilities and certifications underscores that YMTC does not, and cannot, support military end uses.  Accordingly, any suggestion that YMTC contributes to a defense industrial base by virtue of its commercial NAND flash production is unfounded.  DoD's designation rests on a speculative assumption that because flash memory is a dual-use technology in the abstract, any manufacturer of that technology must be connected to military production.  But YMTC's design specifications, testing protocols, target markets, and certifications all demonstrate that its products are not capable of military application in practice.

56.     Accordingly, the record fails to establish that YMTC contributes in any way to the Chinese defense industrial base.  DoD's reliance on generic references to dual-use potential, along with third-party articles that (1) do not mention, or in any way implicate, YMTC, and (2) affirm that commercial memory is not suitable for military applications, does not meet the burden of demonstrating that YMTC qualifies as a CMC under Section 1260H.  The statute demands more than speculation—it requires affirmative evidence of substantial military application.  No such evidence exists here.

**B.     DoD's Finding That YMTC is Affiliated with the MIIT Is Unsupported by the Record**

57.     The Report states that YMTC is a military-civil fusion contributor to the Chinese defense industrial base because YMTC is affiliated with the MIIT.  The evidentiary record simply does not support that conclusion.

58.     Section 1260H defines "military-civil fusion contributor" to include entities affiliated with the MIIT, including "by means of formal participation in research partnerships and projects."[38]  Section 1260H further provides that "[t]he term 'affiliated with' means in close formal

---

[38]  Section 16TH(g)(3)(B)(i).

or informal association."[39]  Critically, not just any association will do—only a "current" and "close" association between entities renders them "affiliated with" each other.[40]

59.    DoD concludes that YMTC is "affiliated with" the MIIT because "YMTC partnered with the Telecommunications Research Institute of MIIT, 1260H-listed companies Huawei Technologies Co., Ltd. and Semiconductor Manufacturing International Corporation ("SMIC"), and other companies to form the China High-end Chip Alliance."[41]  According to DoD, "YMTC was one of the 27 founding members" of the China High-End Chip Alliance, which was established in 2016 in order "for domestic Chinese manufacturer to expand and compete on a global scale in the semiconductor market."[42]

60.    DoD's conclusion that YMTC is affiliated with MIIT is wrong for three reasons.

61.    First, the Report relies exclusively on information from a report published in August of 2016 to support its claim that YMTC is affiliated with the China High-End Chip Alliance.[43]  DoD's reliance on information that is nearly a decade old does not support a finding of affiliation and violates the agency's statutory obligation to base its listing decision "on the most recent information available."[44]  At present, YMTC has no affiliation with the China High-End Chip Alliance, as evidenced by the absence of any subsequent, post-2016 reference to YMTC in

---

[39]    Section 1260H(g)(1).

[40]    *DJI*, 2025 WL 2761210, at *13.

[41]    Report at 6.

[42]    *Id.*

[43]    *Id.* (footnotes 15, 16, and 18 all relay the same information from August 2016 while footnote 17 references a webpage that is no longer accessible).

[44]    Section 1260H(a); *see also* Section 1260H(b).

any public reporting on the China High-End Chip Alliance. Indeed, YMTC has had no involvement with the China High-End Chip Alliance since its founding, which eliminates the only stated justification for YMTC's designation as a CMC.

62. Second, even assuming *arguendo* that the 2016 report cited by DoD was still relevant, the China High-End Chip Alliance is not a formal group. DoD's own sources note as much and question how the companies in the alliance would work together, as they have disparate goals. For example, the August 2016 article cited in footnote 16 in the Report states that "cooperation among Chinese semiconductor and technology companies is difficult to realize" given the differences in the various participants in the alliance.[45] This lack of a common purpose or unified strategy further undermines any claim of actual affiliation between YMTC and the MIIT.

63. Third, the MIIT-related participant in the China High-End Chip Alliance is the China Academy of Telecommunication Research, but the Report includes no evidence of any interaction between this entity and YMTC.

## STATEMENT OF CLAIMS FOR RELIEF

64. DoD's designation of an entity as a CMC is subject to the requirements of the Administrative Procedure Act, including that the agency articulate a coherent explanation for its action with a "rational connection between the facts found and the choice made."[46]

65. Where an agency makes conclusions based on a factual record, its determination must be "supported by substantial evidence."[47] The APA thus requires courts to "hold unlawful

---

[45] Report at 6 n.16.

[46] *Luokung Tech. Corp. v. U.S. Dep't of Defense*, 538 F. Supp. 3d 174, 183 (D.D.C. 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[47] *Id.* (quoting *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999)).

and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or  limitations, or short of statutory right," *id.* § 706(2)(C).

66.     Even in the national security context, where courts generally afford heightened deference to agency determinations, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking."[48]

### COUNT I

**Violation of the Administrative Procedure Act:  Arbitrary and Capricious Agency Action, Action in Excess of Statutory Authority and Otherwise Not in Accordance with Law, 5 U.S.C. § 706(2)**

**(Against All Defendants)**

67.     Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

68.     DoD's most recent redesignation of YMTC as a CMC on January 7, 2025, was the consummation of DoD's decision-making process with respect to YMTC's placement on the CMC List and thus constitutes "final agency action" subject to judicial review.

69.     The statute invoked by Defendants does not authorize their action.

70.     As an initial matter, Defendants relied on the wrong statute—the unamended version of Section 1260H that was in place before amendments took effect on December 23, 2024.

71.     Moreover, even under the correct statute, Defendants' conduct was unauthorized. Defendants have authority under the applicable version of Section 1260H to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military

---

[48]  *Id.* at 182 (quoting *Judulang v. Holder*, 565 U.S. 42, 53 (2011)).

company."[49]  They also "shall make additions or deletions" to that list "based on the latest information available."[50]

72.    Section 1260H permits the Secretary of Defense to designate companies as CMCs only if at least one of two conditions is met.

73.    *First*, the Secretary may designate a company as a CMC if it is

> directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army, Chinese military and paramilitary elements, security forces, police, law enforcement, border control, the People's Armed Police, the Ministry of State Security (MSS), or any other organization subordinate to the Central Military Commission of the Chinese Communist Party, the Chinese Ministry of Industry and Information Technology (MIIT), the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC), or the State Administration of Science, Technology, and Industry for National Defense (SASTIND).[51]

74.    *Second*, the Secretary may designate a company as a CMC if it is a "military-civil fusion contributor to the Chinese defense industrial base."[52]

75.    DoD asserts that YMTC qualifies under the second criterion—as a "military-civil fusion contributor to the Chinese defense industrial base."[53]

76.    That assertion lacks both factual and legal support. YMTC's technologies and products do not have substantial military application and therefore cannot be said to contribute— directly or indirectly—to the Chinese defense industrial base, as required by the statute.

---

[49]  Section 1260H(a).

[50]  Section 1260H(b).

[51]  Section 1260H(g)(2)(B)(i)(I).

[52]  Section 1260H(g)(2)(B)(i)(II).

[53]  Report at 5.

77.     Nor does YMTC fit any of the categories listed by the statute for qualifying as a "military-civil fusion contributor."[54]

78.     In sum, YMTC does not qualify as a CMC, and, in failing to remove YMTC from the CMC List, Defendants also failed to abide by Congress's command that they "shall make . . . deletions" to the CMC List "based on the latest information available."[55]

79.     Nor did DoD provide YMTC or the public with a justification for designating YMTC as a Chinese Military Company, as required by Section 1260H(b)(2)(B).

80.     For these reasons, Defendants' designation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and is "in excess of statutory jurisdiction, authority, or limitations" under the APA.[56]

## COUNT II

**Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action, Action Contrary to Required Procedure, Action Unsupported by Substantial Evidence, 5 U.S.C. § 706(2)**

**(Against All Defendants)**

81.     Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

82.     Defendants' failure to articulate a satisfactory explanation for designating YMTC as a CMC is arbitrary and capricious, and their factual finding that YMTC qualifies as a CMC is unsupported by substantial evidence such that it is arbitrary and capricious in that respect, too.

---

[54]  Section 1260H(g)(3).

[55]  Section 1260H(b)(3).

[56]  5 U.S.C. § 706(2)(A), (C).

83.     "Reasoned decision-making requires that an agency 'articulate a satisfactory explanation for its action' with a 'rational connection between the facts found and the choice made.'"[57]   Defendants' conclusory analysis does not supply a "rational connection" between the facts found and the decision to designate YMTC as a CMC.   This failure is compounded by Defendants' refusal to consider publicly available information, which disproves Defendants' claims.   And it is made still worse by Defendants' disregard of the APA's requirement that they "articulate a comprehensible standard" for which entities qualify as CMCs.[58]

84.     An agency's factual findings must also be "supported by substantial evidence."[59] Here, the evidence that Defendants purport to rely upon is either false, contravened by the public record, or otherwise insufficient to support Defendants' factual finding that YMTC is a CMC. Defendants' factual findings are thus unsupported by substantial evidence.

85.     Defendants' designation of YMTC is therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure as required by law," and "unsupported by substantial evidence."[60]

---

[57]   *Xiaomi*, 2021 WL 950144 at *4 (quoting *Motor Vehicle Mfrs*, 463 U.S. at 43).

[58]   *ACA Int'l*, 885 F.3d at 700 (citation omitted).

[59]   *Foster v. Mabus*, 103 F. Supp. 3d 95, 109 (D.D.C. 2015) (citation omitted).

[60]   5 U.S.C. § 706(2)(A), (D)-(E).

## COUNT III

**Violation of the Administrative Procedure Act:**
**Agency Action Unlawfully Withheld or Unreasonably Delayed,**
**5 U.S.C. § 706(1)**

**(Against All Defendants)**

86.     Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

87.     When publishing the updated CMC listed on January 7, 2025, Defendants failed to delete YMTC from the CMC List, a discrete agency action that Section 1260H required.

88.     5 U.S.C. § 706(1) creates a cause of action to "compel agency action unlawfully withheld or unreasonably delayed." Claims under Section 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."[61]

89.     Here, Section 1260H(b) lays down such a requirement, stating that the Secretary of Defense "shall make . . . deletions to the most recent list" of Chinese Military Companies "based on the latest information available."[62]

90.     The Report rests on assertions that are demonstrably false, contradicted by the public record, or otherwise too speculative and insubstantial to support a factual finding that YMTC qualifies as a CMC.  This further confirms that Defendants failed to satisfy their obligation to base the designation on the most recent information available, as required by statute.

91.     On September 10, 2025, YMTC submitted a formal petition for reconsideration, supported by substantial, contemporaneous evidence demonstrating that it does not meet the

---

[61]   *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004)).

[62]   Section 1260H(b)(3).

statutory criteria for CMC designation. Despite this evidence—and the absence of evidence meeting the statute's requirements—DoD has not removed YMTC from the CMC List or provided any indication of when it will act on YMTC's submissions.

92.    In these circumstances, Defendants have failed to remove YMTC from the CMC List in violation of their mandatory duty under Section 1260H.  Defendants' failure to remove YMTC from the CMC List thus qualifies as agency action "unlawfully withheld or unreasonably delayed" under the APA.[63]

## COUNT IV

**Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action, Action Contrary to Constitutional Right, Power, Privilege, or Immunity,  5 U.S.C. § 706(2)**

**(Against All Defendants)**

93.    Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

94.    The Fifth Amendment to the U.S. Constitution provides:  "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[64]  The Due Process Clause of the Fifth Amendment requires that parties deprived of their property receive adequate notice and an opportunity to be heard.[65]

95.    YMTC is entitled to the protections of the Due Process Clause in light of its substantial connections with the United States, including the presence of its U.S. affiliates—such as Yangtze Memory Technologies, Inc.—and employment of seven individuals in the country.

---

[63]  5 U.S.C. § 706(1).

[64]  U.S. CONST. amend. V.

[65]  *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

96.     As a result of Defendants' actions, YMTC has lost business deals, been branded a national security threat, and been stigmatized in the private marketplace.  YMTC has thus suffered a deprivation of liberty and property.

97.     YMTC did not receive any notice or process prior to that deprivation of liberty and property, let alone due process of law.

98.     The denial of any pre-deprivation process whatsoever is unjustified by any national security interests, and the risk of erroneous deprivation of liberty or property from Defendants' action is intolerably high under the Fifth Amendment to the U.S. Constitution.

99.     In addition, Defendant's reliance on redacted portions of the administrative record as a basis for designating YMTC as a CMC deprives YMTC of it due-process right to an opportunity to be heard and defend itself.  "[I]n all types of cases where administrative and regulatory actions [a]re under scrutiny," "the evidence used to prove the Government's case must be disclosed to the [regulated] individual so that he has an opportunity to show that it is untrue."[66] Accordingly, "[e]fforts to inject secret evidence into judicial proceedings present obvious constitutional concerns."[67]

100.     In these respects, Defendants' designation violates YMTC's due process rights and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and "contrary to constitutional right" under the APA.[68]

### PRAYER FOR RELIEF

YMTC respectfully prays that this Court enter an order and judgment:

---

[66]   *Greene v. McElroy*, 360 U.S. 474, 496 (1959).

[67]   *TikTok Inc. v. Garland*, 145 S. Ct. 57, 74 (2025) (Gorsuch, J., concurring).

[68]   5 U.S.C.§ 706(2)(A), (B).

A.  Declaring that Defendants' designation of YMTC as a CMC is null, void, and with no force and effect;

B.  Declaring that Defendants' designation is not in accordance with law within the meaning of 5 U.S.C. § 706(2); in excess of statutory jurisdiction, authority, or limitations within the meaning of 5 U.S.C. § 706(2); and contrary to constitutional right within the meaning of 5 U.S.C. § 706(2);

C.  Declaring that Defendants' failure to delete YMTC from the CMC List is action unlawfully withheld within the meaning of 5 U.S.C. § 706(1);

D.  Vacating and setting aside the designation;

E.  Compelling Defendants to delete YMTC from the CMC List;

F.  Permanently enjoining Defendants and their officers, employees, and agents from enforcing, implementing, applying, or taking any action whatsoever under, or in reliance on, the designation;

G.  Awarding Plaintiff the costs of this litigation, including reasonable attorneys' fees; and

H.  Such other and further relief as this Court may deem just and proper.

Dated:  December 5, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/   Samuel G. Williamson
Samuel G. Williamson (Bar No. 984748)
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
samwilliamson@quinnemanuel.com
Tel.:  (305) 402-4880

*Attorney for Plaintiff*